IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-03970-STV

JESUS MARIA INESTROZA PAGUADA,

    Petitioner,

v.

JOHNNY CHOATE; *et al*,

    Respondents.

**ORDER GRANTING APPLICATION FOR WRIT OF HABEAS CORPUS**

This matter comes before the Court pursuant to the Order of Reference [#20], entered on January 20, 2026, and the parties' unanimous consent to disposition of this action by a United States Magistrate Judge [#18]. Petitioner Jesus Maria Inestroza Paguada is in the custody of the Aurora Detention Center. [#1 at ¶ 1] On December 11, 2025, Petitioner commenced this action through counsel by filing an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241. [*Id.*] The Court has carefully reviewed the filings to date, and the applicable case law, and has determined that oral argument would not materially assist the Court in reaching a disposition. For the following reasons, the Court **GRANTS** the Petition **IN PART**.

**I.     BACKGROUND**

Petitioner is a citizen of Honduras who entered the United States without inspection in 1996. [#1 at ¶¶ 6, 25] He has resided in the United States since that time and, prior to his arrest, lived in New Jersey. [*Id*. at ¶ 48] On May 10, 2025, Petitioner was driving to work when he was stopped by Immigration and Customs Enforcement ("ICE")

officers at a traffic light in Trenton, New Jersey. [*Id.* at ¶ 49] ICE officers identified Petitioner as someone who was undocumented and arrested him. [*Id.*] Petitioner was charged with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i), as someone who entered the United States without inspection, and was placed in removal proceedings pursuant to 8 U.S.C. § 1229a. [*Id.* at ¶¶ 7] Those proceedings remain pending. [#19 at 3] Petitioner was originally detained at Delaney Hall in Newark, New Jersey, but was transferred in June 2025 to the Aurora Detention Center in Colorado, where he is now detained. [#1 at ¶ 50]

ICE initially designated Petitioner as subject to discretionary detention under Section 236(a)[1] of the Immigration and Nationality Act of 1952 ("INA"). [##1-2 (marking Petitioner as "an alien present in the United States without being admitted or paroled" rather than "an arriving alien" on the Notice to Appear upon Petitioner's arrest); 1-3 (marking "ICE has determined that you are subject to discretionary detention under INA § 236(a)" on the Notice of Custody Determination)] On July 9, 2025, Petitioner had a hearing before an Immigration Judge ("IJ") who held that Petitioner was a danger to others and a flight risk.[2] [#1-5 at 2] According to Petitioner, this determination was based on an outstanding warrant related to an arrest in 1997 that he believed had been dismissed. [#1 at ¶ 53]

---

[1] Section 236 of the Immigration and Nationality Act (INA) is codified at 8 U.S.C. § 1226, and Section 235 of the INA is codified at 8 U.S.C. § 1225. The Court refers to these provisions as Sections 1225 and 1226.

[2] Oddly, the check-the-box form for release or detention offers only one option for detention: "Respondent poses a danger to others and is a flight risk in the alternative." [#1-5] It does not give the IJ the option to declare that: (1) the respondent is a flight risk but not a danger to others, or (2) the respondent is a danger to others but not a flight risk. [*Id.*] And, obviously, not all individuals who are a flight risk are also a danger to others, and vice versa.

On October 3, 2025, after the outstanding warrant was successfully nolle prossed, an IJ granted Petitioner's motion to reconsider his bond. [#1-6 at 2] The same day the IJ granted Petitioner's motion to reconsider bond, however, the IJ concluded that the immigration court lacked bond jurisdiction because Petitioner was detained under 8 U.S.C. § 1225. [#1-7 at 2] In reaching this decision, the IJ relied upon the decision of the Board of Immigration Appeals ("BIA") in *Matter of Yajure-Hurtado*, 29 I. & N. Dec. 216 (BIA 2025) [*Id.*]

On November 26, 2025, Petitioner filed another bond request based upon the decision in *Maldonado Bautista v. Santacruz*, 5:25-cv-01873-SSS-BFM, 2025 WL 3288403 (C.D. Cal (Nov. 25, 2025), *amended and superseded on reconsideration*, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025). [#1 at ¶ 54] On December 8, 2025, the IJ denied this request, concluding that there were no materially changed circumstances and that the Central District of California's judgment in *Maldonado Bautista* did not issue class-wide relief affecting the *Yajure-Hurtado* decision. [#1-8 at 4] On December 24, 2025, Petitioner filed a fourth bond motion, which was denied on February 4, 2026 for lack of jurisdiction. [#21 at 2]

Petitioner filed this habeas action on December 11, 2025, pursuant to 28 U.S.C. § 2241. [#1] Petitioner brings two claims for relief under the Fifth Amendment of the United States Constitution. [*Id.* at ¶¶ 57-68] First, he alleges that Respondents violated the INA and the Central District of California's Order in *Maldonado Bautista* by subjecting him to mandatory detention under Section 1225(b)(2)(A). [*Id.* at ¶¶ 57-64] Second, he alleges a violation of his substantive due process rights under the Fifth Amendment based on Respondents' alleged failure to provide him a bond hearing. [*Id.* at ¶¶ 65-68] Petitioner

3

seeks an order directing Respondents to either immediately release him or to provide an individualized bond hearing. [*Id*. at 14]

## II. LEGAL FRAMEWORK

The INA governs all aspects of immigration law. *See* 8 U.S.C. §§ 1101 *et seq*. In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") which substantially amended the INA. *Nken v. Holder*, 556 U.S. 418, 423-25 (2009) (outlining the changes to the statute). Relevant here, IIRIRA added the expedited removal proceedings of Section 1225 as an alternative mechanism for removing noncitizens from the United States alongside the existing Section 1226 and Section 1229a proceedings. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 106-107 (2020)); *see also Aleman Hernandez v. Baltazar*, No. 1:25-cv-3688-SKC-SBP, 2025 WL 3718159, at *2 (D. Colo. Dec. 23, 2025).

### A. Removal Proceedings

"The usual removal process—commonly referred to as Section 240—involves an evidentiary hearing before an immigration judge, where a noncitizen may attempt to show that he or she should not be removed." *Aleman Hernandez*, 2025 WL 3718159, at *2 (quotations omitted). "These are adversarial proceedings where noncitizens have the right to hire counsel, examine the evidence against them, present their own evidence, and cross-examine witnesses." *Id*. (citing 8 U.S.C. § 1229a(b)(4)(A)-(B)). "These proceedings are recorded, often take months to resolve, and upon a decision by an immigration judge, are appealable to the Board of Immigration Appeals." *Id*. (citing 8 C.F.R. §§ 1003.1, 1240.15). "The BIA order is, in turn, appealable to a U.S. Court of Appeals." *Id*. (citing 8 U.S.C. § 1252).

"The second process provides for expedited removal [pursuant to 8 U.S.C. § 1225(b)(1)]. Under this provision, noncitizens who satisfy two criteria may be subject to expedited removal." *Id*. (citing 8 U.S.C. § 1225(b)(1)). "Under the first criterion, the noncitizens are 'inadmissible' to the United States because they either lack proper entry documents or they engaged in fraud or willfully misrepresented a material fact on their application for admission." *Id*. (citing 8 U.S.C. § 1225(b)(1)(A)(i)). "The second criteria provides that the noncitizens fall into at least one of two categories: (1) they are 'arriving in the United States,' 8 U.S.C. § 1225(b)(1)(A)(i) ('Arriving [Noncitizen] Provision'); and or (2) they 'have not been admitted' or paroled into the United States and have 'not affirmatively shown' to an immigration officer's satisfaction that they have been 'physically present in the United States continuously for [a] 2-year period immediately prior to the date of the determination of inadmissibility[,]' *id*. § 1225(b)(1)(A)(iii)(II) ('Designation Provision')." *Id*. "In contrast to the usual removal process, 'the expedited removal order is usually issued within a few days, if not hours.'" *Id*. (quoting *Make the Rd. New York v. Noem*, No. 25-cv-190 (JMC), 2025 WL 2494908, at *3 (D.D.C. Aug. 29, 2025)). "In these proceedings, noncitizens typically have no opportunity to review the evidence against them or prepare a defense." *Id*. (citing 8 U.S.C. § 1225(b)(1)(B)(iii)(IV); 8 C.F.R. § 235.3(b)(2)(iii)). "And there is almost no opportunity for judicial review." *Id*. (citing 8 U.S.C. § 1252(a)(2)(A)).

**B.     Detention Pending Removal**

The INA provides two options for detaining noncitizens pending removal proceedings. *Id*. First, Section 1225 authorizes the government to inspect, detain, and, if appropriate, remove applicants for admission. *Id*. (citing 8 U.S.C. § 1225). "Section

5

1225(b) requires the detention of two groups of 'applicants for admission.'" *Id.* (citing 8 U.S.C. § 1225(b)(1), (2)). "To the first grouping, § 1225(b)(1) . . . applies to noncitizens who (1) are inadmissible because they lack proper documentation or because they engaged in fraud or willful misrepresentations in their applications, *and* (2) fall within the 'Arriving [Noncitizen] Provision' or the 'Designation Provision.'" *Id.* (citing 8 U.S.C. § 1225(b)(1)(A)(i), (iii)(II)). "To the second grouping, § 1225(b)(2) applies 'in the case of [a noncitizen] who is an applicant for admission, [where] the examining immigration officer determines that [the noncitizen] *seeking admission* is not clearly and beyond a doubt entitled to be admitted.'" *Id.* (citing 8 U.S.C. § 1225(b)(2)(A) (emphasis added)). "Noncitizens detained under § 1225, no matter which grouping, are not entitled to bond hearings." *Id.* (citing *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018)).

Second, Section 1226 authorizes the arrest and detention of noncitizens "pending the outcome of removal proceedings." *Id.* at *3 (quoting *Jennings*, 583 U.S. at 289). Unlike Section 1225(b), Section 1226 generally provides for individualized custody determinations, including the possibility of release on bond (except where mandatory detention under Section 1226(c) applies).[3] A person "cannot be subject to both

---

[3] Section 1226(c) "carves out a statutory category of [noncitizens] who may not be released under § 1226(a)." *Aleman Hernandez*, 2025 WL 3718159, at *5 (quoting *Jennings*, 583 U.S. at 289) (emphasis omitted). "Under this subcategory, noncitizens who fall 'into one of several enumerated categories involving criminal offenses and terrorist activities' are not eligible for release and must be detained without bond." *Id.* (quoting Jennings, 583 U.S. at 289). "Importantly, the plain text of section 1226(c) requires detention for certain noncitizens who are 'deportable' (meaning they were previously admitted to the United States) as well as certain noncitizens deemed 'inadmissible' (meaning they have not been admitted to the United States)." *Id.* (quoting *Rodriguez v. Bostock*, No. 3:25-cv-05240-TMC, 2025 WL 2782499, at *17 (W.D. Wash. Sept. 30, 2025)) (emphasis omitted).

6

mandatory detention under § 1225 and discretionary detention under § 1226." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 485 (S.D.N.Y. 2025).

After the enactment of the IIRIRA, the Executive Office for Immigration Review ("EOIR") promulgated regulations clarifying that individuals who entered the United States without inspection generally were not considered detained under Section 1225, but instead were subject to detention under Section 1226(a). *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination."). Consistent with this view, the Supreme Court has explained that Section 1226(a) "sets out the default rule" governing detention of noncitizens already present in the country pending removal proceedings. *Jennings*, 583 U.S. at 288-89; *see also Aleman Hernandez,* 2025 WL 3718159, at *6 ("the default discretionary bond procedures in § 1226(a) apply to noncitizens who are (1) present in the United States without having been admitted or paroled, and (2) have not been implicated in any of the enumerated crimes set forth in § 1226(c)" (citing *Rodriguez v. Bostock*, No. 3:25-cv-05240-TMC, 2025 WL 2782499, at *17 (W.D. Wash. Sept. 30, 2025))); 8 U.S.C. § 1226(a) (The Attorney General may release a noncitizen on bond "[e]xcept as provided in subsection (c).").

### III.    ANALYSIS

A district court may grant a writ of habeas corpus to any person who demonstrates that he is "in custody in violation of the Constitution or laws . . . of the United States." 28

7

U.S.C. § 2241.  This includes "[c]hallenges to immigration detention."  *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004).  The individual in custody bears the burden of proving that their detention is unlawful.  *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

The threshold question before the Court is purely statutory.[4]  Petitioner contends that he is detained subject to Section 1226 and is thus entitled to a custody determination.  [#1 at ¶¶ 13, 43]  Respondents maintain that Petitioner remains an "applicant for admission" under Section 1225 and that his detention is governed by Section 1225(b).[5]  [#19 at 4-6]  Respondents believe their interpretation of the statutory scheme is supported by the text of the statute, the legislative history, and the Supreme Court's interpretation of the statute in *Jennings*.  [#19 at 7-11]  The Court disagrees.

Respondents are detaining Plaintiff pursuant to Section 1225(b)(2)(A).  [#19 at 1]  As outlined above, "for section 1225(b)(2)(A) to apply, several conditions must be met—

---

[4] Petitioner cites *to Maldonado Bautista* and contends that he is a member of the Bond Eligible Class certified in *Maldonado Bautista* and is therefore entitled to relief pursuant to the declaratory judgment entered in that action.  [#1 at ¶ 2-4]  Respondents argue that *Maldonado Bautista* does not have any preclusive or binding effect in this District and does not control the outcome of this case.  [#19 at 12-14]  The Court need not resolve the parties' dispute regarding the scope or preclusive effect of that decision.  Instead, the Court proceeds to independently analyze whether Petitioner's detention arises under Section 1225 or Section 1226 and resolves the present petition on that basis.

[5] The Court notes that the arrest materials reflect that Petitioner was initially detained pursuant to Section 1226.  [*See* ##1-2, 1-3]  By the October 3, 2025 hearing, however, Respondents were proceeding on the basis that Section 1225 governed his detention.  [*See* #1-7]  Respondents do not explicitly state that a formal re-designation occurred, nor do they identify when or on what basis such a change was made.  Instead, their present position assumes the applicability of Section 1225 despite the initial Section 1226 designation reflected in the arrest materials.  [*See generally* #19]  But "settled law precludes the Government from switching gears to argue [Petitioner] is now somehow subject to § 1225(b)(2)."  *Diallo v. Baltazar*, No. 1:25-cv-3548-SKC, 2026 WL 237296, at *2 (D. Colo. Jan. 29, 2026) (citing *Patel v. Crowley*, No. 25 CV 11180, 2025 WL 2996787, at *5 (N.D. Ill. Oct. 24, 2025)).  To the extent Respondents contend that Section 1225 now governs Petitioner's detention pursuant to a changed designation, the argument is likely waived and, in any event, as detailed herein, is ultimately unpersuasive.

in particular, an examining immigration officer must determine that the individual is: (1) an applicant for admission; (2) seeking admission; and (3) not clearly and beyond a doubt entitled to be admitted." *Facio v. Baltazar*, No. 25-CV-03592-CYC, 2025 WL 3559128, at *2 (D. Colo. Dec. 12, 2025) (quoting *Martinez v. Hyde*, 792 F. Supp. 3d 211, 214 (D. Mass. 2025)). Here, the seeking admission element has not been satisfied.

The Supreme Court has defined "applicant for admission" as "an alien who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted.'" *Jennings*, 583 U.S. at 287 (quoting § 1225(a)(1)). And courts have explained that an "applicant for admission . . . doesn't require an application of any sort. All that's needed is presence without admission—in other words, it applies to the great number of undocumented immigrants who currently live here." *Aleman Hernandez*, 2025 WL 3718159, at *4 (quoting *J.G.O. v. Francis*, No. 25-CV-7233 (AS), 2025 WL 3040142, at *3 (S.D.N.Y. Oct. 28, 2025)). Thus, the Court would tend to agree with Respondents that the first element of Section 1225(b)(2)(A) applies here—Petitioner is present in the United States without admission.

But, even accepting that Petitioner is an applicant for admission, Section 1225(b)(2)(A) requires more—it requires the applicant to be "seeking admission." *Id*. at *3; *see also* 8 U.S.C. § 1225(b)(2)(A). In other words, being an "applicant for admission" does not necessarily equate to an individual "seeking admission"—the first and second elements of Section 1225(b)(2)(A) are distinct elements. Both the structure of the statute and basic principles of statutory interpretation compel this conclusion.

Section 1225(a)(1) creates a legal status: "An alien present in the United States who has not been admitted . . . shall be deemed . . . an applicant for admission." This

9

Section defines which noncitizens are considered "applicant[s] for admission." Section 1225(b)(2)(A), on the other hand, sets forth the manner for detaining *certain* applicants for admission. Specifically, that Section provides: "in the case of an alien who is an applicant for admission, if the examining officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained." If "applicant for admission" was synonymous with "alien seeking admission," the "alien seeking admission" language is superfluous. If the two terms were synonymous, Section 1225(b)(2)(A) could have been written: "in the case of an alien who is an applicant for admission, if the examining officer determines that [such alien] is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained." If the two terms were synonymous, there would be no need to use the second term "alien seeking admission." And courts presume that Congress does not include superfluous language in its statutes. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (quotations omitted)). Thus, the use of both phrases reflects Congress's decision to require more than mere admission status to trigger mandatory detention under Section 1225(b)(2)(A).

And contrary to Respondents' argument, *Jennings* does not collapse the two elements and, indeed, supports the Court's conclusion that an "applicant for admission" does not equate to an individual "seeking admission." The *Jennings* Court described Section 1225 as governing "applicants of admission." 583 U.S. at 287-88. It did not analyze the "seeking admission" language or hold that all "applicants for admission" are

10

necessarily "seeking admission" at all times. The only reference to "seeking admission" appeared in the statement: "In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." *Id*. at 289. Thus, if an applicant is actively "seeking admission," then Section 1225 applies to that applicant. Yet, in the same paragraph, the Supreme Court explicitly recognized that the Government "may detain certain aliens *already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)*." *Id.* (emphasis added). Thus, Section 1226, not Section 1225(b)(2)(A), is the catchall provision that applies to those aliens already in the country pending the outcome of their removal proceedings.

Consistent with this analysis, courts have held that the "'seeking admission' [element] requires a noncitizen to *continue* to want to *go into* the country." *Aleman Hernandez*, 2025 WL 3718159, at *4 (quoting *J.G.O.*, 2025 WL 3040142, at *3) (emphasis in original). "Under this plain language, § 1225(b)(2)(A) cannot apply to Petitioner because you can't go into a place where you already are." *Id*. (quotation omitted) (finding Section 1225 inapplicable to a petitioner who had resided in the United States for over ten years). And recent decisions in this district have held that individuals who have lived in the United States for a significant period, like Petitioner, are not "seeking admission" under the statute. *See, e.g., Facio*, 2025 WL at *1-2 (finding petitioner not to have been "seeking admission" because ICE detained him 28 years after he entered the United States) (collecting cases). "[B]ecause section 1225(b)(2)(A) applies only to those noncitizens who are actively seeking admission to the United States, it cannot, according to its ordinary meaning, apply to persons who have already been residing in the United States for several years." *Id*. at *2 (quotations omitted) (collecting cases).

11

Here, Petitioner entered the United States in 1996, where he has resided since that time. [#1 at ¶¶ 6, 49] He was apprehended 29 years later while in the country. [*Id*. at ¶¶ 48-49] Under these circumstances, the Court finds that he was not "seeking admission" within the ordinary meaning of Section 1225(b)(2)(A).[6]

Under the plain language of the statute, the Court finds that Petitioner's detention is governed by Section 1226(a). To hold otherwise would collapse the statutory distinction between Sections 1225 and 1226 and render Section 1226 largely superfluous as applied to noncitizens who entered this country without inspection. Because Section 1226 applies, Petitioner is entitled to the custody procedures provided by that statute.[7] Failure to conduct a hearing within the strictures of Section 1226 may result in this Court immediately ordering Petitioner's release.

As a final point, Respondents argue that even if Petitioner is entitled to a bond hearing under Section 1226(a), his request is moot because he has already appeared before an IJ, who denied bond, and because Petitioner was granted a subsequent custody redetermination hearing that as of filing had not yet been scheduled. [#19 at 2]

---

[6] Moreover, as explained earlier, upon his arrest, Petitioner was not placed in expedited removal proceedings under Section 1225(b)(1), but was instead placed in full removal proceedings under Section 1229a. [*Id*. at ¶ 7] This further confirms that Section 1225(b)'s mandatory detention framework does not govern Petitioner's custody.

[7] Petitioner requests immediate release from custody or, alternatively, an individualized bond hearing. [#1 at 15] The Court deems the latter to be appropriate in this case because Petitioner does not challenge the arrest itself, just the detention under Section 1226(a). Section 1226(a) authorizes a noncitizen's detainment only pursuant to a warrant issued by the Attorney General. Although some courts—including at least one in this District, *see Diallo*, 2026 WL 237296, at *3—have suggested that a warrantless arrest under Section 1226(a) may, in certain circumstances, provide an independent basis for release, Petitioner does not challenge the legality of his initial arrest in this action. Rather, Petitioner contests only the statutory basis for his continued detention and the absence of a bond hearing. Accordingly, the Court need not address whether the arrest itself would entitle Petitioner to relief.

This argument is unavailing. The prior denials were based on the IJ's determination that it lacked jurisdiction to grant Petitioner bond. [## 1-6, 1-7, 1-8] And at the subsequent custody redetermination hearing bond was denied based on this same jurisdictional conclusion. [*See* #21 at 2] Accordingly, the Court does not find Petitioner's request for a bond hearing, conducted pursuant to Section 1226, to be moot.[8]

IV.   **CONCLUSION**

For the foregoing reasons, it is **ORDERED**:

(1) that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [#1] is **GRANTED**;[9]

(2) Respondents shall provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within **SEVEN DAYS** of the date of this Court's order;

(3) Respondents shall file a status report within **TEN DAYS** of the date of this Court's order to certify compliance. The status report shall include if and when the bond hearing occurred, if bond was granted or denied, and if bond was denied, the reasons for the denial; and

(4) Pursuant to the All Writs Act, 28 U.S.C. § 1651(a), and to preserve the Court's jurisdiction, Respondents **SHALL NOT REMOVE** Petitioner from the District of Colorado or the United States unless or until this Court or the Court of Appeals for the Tenth Circuit vacates this Order.

---

[8] Because the Court grants relief on statutory grounds, it declines to reach Petitioner's Fifth Amendment claims. If Respondents fail to provide a bond hearing consistent with Section 1226(a), Petitioner may renew his constitutional arguments.

[9] To the extent Petitioner's Counsel seeks an award of attorney's fees, she must file a separate motion for fees that complies with the Federal Rules of Civil Procedure and the Local Rules of Practice for this District.

DATED: March 5, 2026							BY THE COURT:

s/Scott T. Varholak  
Chief United States Magistrate Judge

14